UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

UNITED STATES OF AMERICA,

       Plaintiff,

v.

                                                    Case No. 12-20751

WILLIAM MICHAEL HOWARD,

       Defendant.
_____/

**OPINION AND ORDER GRANTING DEFENDANT'S
EMERGENCY MOTION FOR COMPASSIONATE RELEASE,
ORDERING DEFENDANT'S IMMEDIATE RELEASE,
AND SETTING CONDITIONS FOR RELEASE**

Defendant William Howard pleaded guilty to one count of possession of a stolen firearm in violation of 18 U.S.C. § 922(j). (ECF No. 23, PageID.63.) On August 22, 2013, the court sentenced him to a within-the-Guidelines sentence of 120 months of imprisonment. (ECF No. 30, PageID.104.) He is currently incarcerated at FCI Ashland Satellite Camp and is scheduled to be released on April 4, 2022. (ECF No. 33, PageID.124.) Pending before the court is Defendant's "Emergency Motion for Compassionate Release." (ECF No. 33.) The court held argument on the motion on August 6, 2020. For the reasons explained below, the court will grant Defendant's motion.

Defendant is 63 years old, has a Body Mass Index (BMI) of 37.6, and has hypertension and diabetes. (*Id.* at PageID.140–141.) He argues that his release is justified based on these health conditions because they place him at an increased risk of contracting the Coronavirus Disease ("COVID-19") while incarcerated. (*Id.* at

PageID.125.) In response, the Government concedes that Defendant's health conditions make him more vulnerable to COVID-19 and, as such, qualify as an "extraordinary and compelling reason[] for release" under Sentencing Guidelines Manual § 1B1.13(1)(A) & cmt. n.1(A)). (ECF No. 36, PageID.393.) Nevertheless, the Government maintains that Defendant's motion should be denied because Defendant would present a danger to the community if released and further argues that the sentencing factors outlined in 18 U.S.C. § 3553 do not support his early release. (*Id.*)

While Government initially argued that Defendant failed to exhaust his administrative remedies, it subsequently decided to waive its exhaustion argument in its supplemental briefing and at oral argument. (ECF No. 38, PageID.482.) The exhaustion requirement for compassionate release motions amounts to a mandatory claim-processing rule. *United States v. Alam*, 960 F.3d 831, 834 (6th Cir. 2020). However, this requirement can be waived or forfeited. *Hamer v. Neighborhood Hous. Servs.*, 138 S. Ct. 13, 17 (2017) ("If properly invoked, mandatory claim-processing rules must be enforced, but they may be waived or forfeited."). Thus, based on the Government's changed position on the exhaustion argument, the court cuts to the substantive merits of Defendant's motion.

If, such as in this case, a Defendant presents "extraordinary and compelling reasons warrant such a reduction," 18 U.S.C. § 3582(c)(1)(A), the court must then consider the sentencing factors provided under 18 U.S.C. § 3553(a) and determine if a sentence reduction "is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018) is the "applicable policy statement[]" with which courts must

comply. 18 U.S.C. § 3582(c)(1)(A). Relevant here, § 1B1.13 provides that a defendant must "not [be] a danger to the safety of any other person or to the community" under 18 U.S.C. § 3142(g).

The Government argues that Defendant would pose a danger to the community if released principally because "he is a multi-convicted felon who was found in possession of a firearm and has a lengthy criminal history." (ECF No. 36, PageID.393.) During argument, the Government highlighted Defendant's 1978-armed robbery conviction, 2010 drug offense, and his instant firearm offense.[1] These kinds of offenses are, indeed, serious and raise the specter of danger to others. The court nonetheless does not find that Defendant would in fact pose a danger to others or the community if released at this point in his sentence.

Defendant's most serious offense of armed robbery occurred roughly 42 years ago. This decades-old offense does not render Defendant, now sixty-three years old with an assortment of serious health conditions, a present danger to the community. Nor is the court persuaded that Defendant's more recent offenses demonstrate his *present* danger to the community. Certainly, the court does not condone Defendant's prior conduct, but the court heavily weighs Defendant's apparent good behavior during his incarceration, his present age, and health conditions in assessing is his current risk of dangerousness. Defendant's age is perhaps most probative in this assessment. Defendant committed the instant offense in his early fifties; however, empirical data suggests that offenders over sixty are "substantially less likely than younger offenders to

---

[1] It strikes the court as neither persuasive nor in good form for Defendant's counsel to repeatedly label as "mean-spirited" opposing counsel's arguments, all of them well within the bounds of fair comment. (ECF No. 37, PageID.420.)

3

recidivate following release." Kim Steven Hunt & Billy Easley, *The Effects of Aging on Recidivism Among Federal Offenders*, U.S. Sentencing Comm'n, at 3 (2017), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf. Defendant's age mitigates his risk of dangerousness to others.

      Moreover, the court weighs the fact that Defendant has completed the majority of his substantial ten-year sentence. According to the case's assigned Probation Officer, Defendant may be eligible for release to a halfway facility in—or even before—October, 2021. Empirical data also suggests that sentences similar to Defendant's instant sentence correspond with a reduction in recidivism. *See* Ryan Cotter, *Length of Incarceration and Recidivism*, U.S. Sentencing Comm'n, at 4 (April 2020), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2020/20200429_Recidivism-SentLength.pdf ("[O]ffenders incarcerated for more than 60 months up to 120 months were approximately 17 percent less likely to recidivate relative to a comparison group sentenced to a shorter period of incarceration."). In sum, the court concludes that Defendant's present age, health conditions, and good behavior—in combination with the fact that he has served the majority of his 120-month sentence—indicate that he would not pose a danger to the community if released at this stage in his life. The court now turns to the relevant sentencing factors.

      Title 18 U.S.C. § 3553(a) provides that "[a] court, in determining the particular sentence to be imposed, shall consider[:]"

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

4

>   (2) the need for the sentence imposed—
>
>   >   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>   >
>   >   (B) to afford adequate deterrence to criminal conduct;
>   >
>   >   (C) to protect the public from further crimes of the defendant; and
>   >
>   >   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
>   (3) the kinds of sentences available;
>
>   (4) the kinds of sentence and the sentencing range established . . .
>
>   (5) any pertinent policy statement . . .
>
>   (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
>   (7) the need to provide restitution to any victims of the offense.

"[D]istrict courts have 'broad discretion to determine what sentence will serve § 3553(a)'s statutory objectives." *United States v. Kincaid*, 805 F. App'x 394, 394 (6th Cir. 2020) (quoting *United States v. Kontrol*, 554 F.3d 1089, 1093 (6th Cir. 2009)).

**"[T]he nature and circumstances of the offense and the history and characteristics of the defendant."** 18 U.S.C. § 3553(a)(1). Defendant claims that he possessed the firearm because he took it away from children. (ECF No. 33, PageID.146.) As explained above, Defendant's most serious offense occurred long ago. Though his record is not spotless, his present age, medical conditions, and current length of incarceration correspond with a lower risk of recidivism. Defendant's age and medical conditions also make him particularly vulnerable to contracting COVID-19. In supplemental briefing provided by counsel following the motion hearing, it appears that

5

at least three inmates at Defendant's facility have tested positive for COVID-19. (ECF No. 42-1, PageID.500.) The Government responds that these positive tests represent inmates who initially tested positive when they entered Ashland from different facilities and who were thereafter placed in quarantine before being released into general population. (ECF No. 43, PageID.502–503.) Ashland's reported data also show that one staff member has "recovered" although the data lists no positive staff test results. That staff are sometimes shifted from place to place, as with prisoners, provides one possible explanation for this. Of note, the data now shows that six inmates have tested positive. *Covid-19*, Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Aug. 19, 2020).

      As discussed during the hearing, there exist testing limitations within the BOP, not dissimilar to the testing limitations which exist throughout the country. The Government asserts that prisoners receive "rapid" testing, but it is not clear whether staff, or the individuals with whom they live, are afforded the same testing resources. Ashland's one "recovered" staff member exemplifies these testing limitations. Testing can be difficult to obtain, results can weeks to receive, and individuals who present with no symptoms may go untested. *See* Jamie Ducharme, *Patients Are Waiting Weeks for COVID-19 Test Results. Here's Why That's a Huge Problem*, Time.com (July 22, 2020, 11:07 AM), https://time.com/5869130/covid-19-test-delays/ (discussing delays in COVID-19 testing). Staff come to work and go home from facilities and, like the rest of free society, some may choose to *not* abide by proper social distancing and other relevant protocols. The court recognizes that the BOP has implemented procedures to limit the spread of COVID, but certain risks simply cannot be avoided, particularly those

6

associated with the rotating inflow of staff, the facility's open-air dormitory layout, and shared lavatories. These limitations are exemplified by the confirmed inmate cases of COVID-19 at the facility and positive inmate tests. Yes, the infection rates at Defendant's facility *appear* low as compared to other institutions based on current reported data, but the data only tell so much of the story. The virus is within Defendant's facility, and once it more fully spreads—which Defendant's expert opines is but a matter of time—Defendant will be one of the individuals most at risk for suffering severe symptoms. The court concludes that this risk weighs in favor of release.

**"The need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."** 18 U.S.C. § 3553(a)(2)(A). Defendant was sentenced to the statutory maximum of 120 months for the instant firearms offense. (ECF No. 23, PageID.66.) The court does not find that early release at this point in Defendant's sentence—when he has already served approximately 80 percent of his sentence— would undermine the serious nature of the offense or deter respect for the law.

**"[T]he need for the sentence imposed . . . to afford adequate deterrence to criminal conduct."** 18 U.S.C. § 3553(a)(2)(B). The court is satisfied that the portion of Defendant's sentence already served is adequate to promote deterrence, especially given Defendant's age.

**"[T]he need for the sentence imposed . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."** 18 U.S.C. § 3553(a)(2)(D). Defendant is sixty-three years old, has a high BMI and suffers from diabetes and high blood

7

pressure. These conditions are recognized risk factors for COVID-19, and as explained above, make Defendant especially vulnerable to contracting the virus while incarcerated. Thus, continued incarceration poses a heightened risk to Defendant's health as compared to his proposed residence for release; the home of his granddaughter at which Defendant would have his own bedroom and minimal contact with others. The court affords no weight to the need for continued detention to obtain additional education or vocational training.

    **"[T]he sentencing range established."** 18 U.S.C. § 3553(a)(4). Defendant was sentenced to 120 months imprisonment, the statutory maximum for his offense. (ECF No. 30, PageID.104.) This factor weighs in favor of release.

At the hearing, the court heard testimony from Defendant's granddaughter, with whom he would live upon his release. She testified that Defendant would have his own bedroom and that the home would be occupied by no one other than Defendant, herself, and her minor child. Defendant's granddaughter further testified to the strict precautions she has undertaken to prevent the spread of COVID-19 in her household and stated that notwithstanding Defendant's criminal history, she was fully prepared to allow Defendant to reside with her. Based on this presentation, the court is satisfied that Defendant would be able to properly quarantine and abide by social distancing measures upon his release.

In granting Defendant's motion, the court will order Defendant to undergo a mandatory period of quarantine at the home of his granddaughter. Additionally, he must comply with all mandatory and special terms of his supervised release, and any

additional conditions discretionarily established by the Probation Department. Accordingly,

IT IS ORDERED that Defendant's "Emergency Motion for Compassionate Release" (ECF No. 33) is GRANTED. The BOP is DIRECTED to release Defendant IMMEDIATELY. Upon his release, Defendant shall wear a mask while being transported to his granddaughter's home and upon arrive immediately commence a 14-day quarantine.

IT IS FURTHER ORDERED that Defendant's sentence of imprisonment is reduced to time served.

IT IS FURTHER ORDERED that, immediately upon release, Defendant shall commence a new term of supervised release of 36 months.

IT IS FURTHER ORDERED that Defendant shall serve the first 12 months of supervised release under home confinement, with electronic location monitoring to commence as soon as the Probation Department can, upon its own determination, safely install the necessary electronic monitoring equipment and upon such other conditions as the Probation Department deems necessary.

IT IS FURTHER ORDERED that, after serving in home-confined supervised release for 12 months, Defendant will serve the next 12 months without the home-confinement condition but with a curfew, the details of which shall be imposed by the Probation Department.

IT IS FURTHER ORDERED that Defendant's final 12 months shall be served according to the original conditions of Defendant's three-year supervised release term that the Court imposed upon Defendant's August 2013 sentencing.

IT IS FURTHER ORDERED that additional conditions will be included in the Court's amended judgment.

IT IS FURTHER ORDERED that this Order replaces the Court's August 2013 designation of supervised release.

                    s/Robert H. Cleland          /
                    ROBERT H. CLELAND
                    UNITED STATES DISTRICT JUDGE

Dated: August 19, 2020

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, August 19, 2020, by electronic and/or ordinary mail.

                    s/Lisa Wagner               /
                    Case Manager and Deputy Clerk
                    (810) 292-6522

S:\Cleland\Cleland\HEK\Criminal\12-20751.HOWARD.compassioante.release.HEK.4.docx